IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANDRITZ INC., a Georgia corporation, and ANDRITZ AB, a Swedish corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CORTEX NORTH AMERICA CORPORATION, an Oregon Corporation,<br><br>Defendant. | Case No. 3:20-cv-00029-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Andritz, Inc. and Andritz AB (together, "Andritz") filed this patent infringement action against Cortex North America Corporation ("Cortex"). Cortex filed an answer to the complaint, including counterclaims and affirmative defenses alleging, among other things, inequitable conduct in Andritz's prosecution of the patents-in-suit. Currently before the Court is Andritz's motion to dismiss Counts III, IV, and V of Cortex's counterclaims, and strike the third and sixth affirmative defenses. All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons explained below, the Court grants Andritz's motion.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

Andritz filed the present action based on Cortex's alleged "current and threatened infringement of US Patent Nos. 7,159,626 (the "'626 Patent"), 7,506,674 (the "'674 Patent"), 7,681,609 (the "'609 Patent"), and 8,082,958 (the "'958 Patent"). (Compl. ¶ 1.) These patents "describe and claim wood working knives, knifeclamping assemblies, and/or a combination of wood working knives and clamping assemblies used in the forest product industries such as sawmills, chip mills, and pulp mills." (*Id.*)

In Count III of Cortex's counterclaims, Cortex alleges that Andritz's predecessor-in-interest obtained allowance of the '626 patent by knowingly and intentionally failing to disclose material prior art to the United States Patent and Trademark Office ("USPTO" or "PTO"), including U.S. Pat. Nos. 4,164,329; 4,269,244; 4,694,995; 4,754,789; 5,183,089; 5,348,065; and 5,904,193; Austrian Pat. No. AT 397,629 ("Böhler"); German Pat. No. DE 1106483; Swedish Pat. No. 448842; PCT Pub. No. WO96/00639 ("Frick"); the Leitz CentroFix and CentroStar knives; and the 2001 edition of *The Leitz Lexicon*. (Answer ¶ 42.)

Cortex alleges that these prior art references were known to the '626 applicant because the applicant disclosed the references to the USPTO as prior art during the prosecution of commonly owned U.S. Pat. No. 6,722,595 (the "'595 patent") and U.S. Pat. No. 6,951,313 (the "'313 patent"), both of which took place before the issuance of the '626 patent. (Answer ¶¶ 43-44.) Cortex alleges that the applicant failed "to disclose the withheld references in an attempt to deceive the USPTO and obtain issuance of the '626 patent." (Answer ¶ 48.)

In Count IV, Cortex alleges that when Andritz gained "allowance of the '626 patent through inequitable conduct, [it] also gained the ability to file and obtain allowance of the continuation applications resulting in the '674 and '609 patents[,]" which are "related to the '626 patent." (Answer ¶¶ 57-58.) Cortex alleges that "the applicant's acts of inequitable conduct with

PAGE 2 – OPINION AND ORDER

respect to the '626 patent otherwise infected the related applications leading to the '674 and '609 patents." (Answer ¶ 61.)

In Count V, Cortex alleges that Andritz gained "allowance of the '958 patent by knowingly and intentionally making false and misleading statements to the USPTO during prosecution." (Answer ¶ 65.) The examiner of the '958 application initially rejected the claim as obvious over references included in the applicant's '626 patent. (Answer ¶ 66.) Cortex alleges that to overcome the rejection, the applicant "argued with reference to Fig. 3 of the '626 patent that '[t]here is nothing in the Biller reference that suggests its structure should be combined with planar portions on the ridge or on the surface adjacent the cutting edges.'" (Answer ¶ 69.) Cortex alleges that this statement was false and misleading, "because it ignored Fig. 2 of the '626 reference, which clearly includes planar portions on the surface adjacent the cutting edges." (Answer ¶ 70.)

## DISCUSSION

### I.   STANDARD OF REVIEW

####    A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 678)).

PAGE 3 – OPINION AND ORDER

B.     Motion to Strike

Under Rule 12(f), a court may strike an affirmative defense if it presents an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Immaterial matter in a pleading is content that has no essential or important relationship to the claim for relief or the defenses being pleaded," while "[i]mpertinent matter is that which does not pertain, and is not necessary, to the issues in question." *Complete Distrib. Servs., Inc. v. All States Transp., LLC*, No. 3:13-cv-00800-SI, 2015 WL 1393281, at *2 (D. Or. Mar. 25, 2015) (citation, brackets, and quotation marks omitted). A responsive "pleading is legally insufficient 'only if it clearly lacks merit under any set of facts the defendant might allege.'" *Id.* (quoting *Polk v. Legal Recovery Law Offices,* 291 F.R.D. 485, 489 (S.D. Cal. 2013)).

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). "The disposition of a motion to strike is within the discretion of the district court, but such motions 'are disfavored and infrequently granted.'" *Complete Distrib.*, 2015 WL 1393281, at *3 (quoting *Legal Aid Servs. of Or. v. Legal Servs. Corp.,* 561 F. Supp. 2d 1187, 1189 (D. Or. 2008)).

II.    ANALYSIS

Andritz moves to dismiss Counts III, IV, and V of Cortex's counterclaims on the ground that Cortex does not adequately plead inequitable conduct. Andritz also moves to strike the third and sixth affirmative defenses for failure to plead a sufficient factual basis. For the reasons explained below, the Court grants Andritz's motion to dismiss the counterclaims and strike the affirmative defenses.

A.  **Inequitable Conduct**

1.  **Legal Standards**

"[A]llegations of inequitable conduct bear on an issue that 'pertains to or is unique to patent law,' [and therefore] this Court must apply Federal Circuit law to determine whether the pleadings are adequate." *Techshell, Inc. v. Max Interactive, Inc.*, No. SACV 19-00608 AG (ADSx), 2019 WL 4422682, at *2 (C.D. Cal. Aug. 5, 2019) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)).

A counterclaimant alleging inequitable conduct must satisfy the pleading standards set forth in FED. R. CIV. P. 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). To allege inequitable conduct, "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. "The relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.* (citing *Hebert v. Lisle Corp.*, 99 F. 3d 1109, 1116 (Fed. Cir. 1996)).

2.  **Count III**

    a.  **Prior References**

Andritz seeks dismissal of Count III with respect to the all of the prior art references on the ground that Cortex has not adequately pleaded intent to deceive. (Mot. at 11-20.) Andritz argues that Cortex includes no specific allegations as to intent to deceive, noting that "[Cortex] merely alleges that Andritz's predecessor in interest . . . was aware of the reference and/or that the reference was previously cited" and that it "later failed to disclose" the references in the '626 application. (Mot. at 11.) Cortex responds that it has adequately alleged that "the '626 applicant

knew of the withheld prior art references" and that therefore the "only reasonable inference the Court can draw is that [the applicant] intentionally withheld the references." (Opp'n at 3-4.)

To plead intent to deceive, the party alleging inequitable conduct must allege "facts that allow the Court to 'reasonably infer that a specific individual (1) knew of the withheld material information . . . and (2) withheld or misrepresented this information with specific intent to deceive the PTO.'" *Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-02727 NC, 2014 WL 645365, at *3 (N.D. Cal. Feb. 19, 2014) (citing *Exergen*, 575 F.3d at 1328-29). "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)).

Cortex alleges that Andritz's predecessor-in-interest knew about the prior art references because it cited the references during prior prosecutions and "intentionally did not disclose these prior art references to the USPTO during prosecution of the '626 patent." (Answer ¶ 47.) However, courts have consistently held that "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." *Exergen*, 575 F.3d at 1331; *see also Therasense*, 649 F.3d at 1288-89 ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."); *Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2011 WL 1044396, at *7 (N.D. Cal. Mar. 22, 2011) ("[T]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to

PAGE 6 – OPINION AND ORDER

meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." (quoting *Exergen*, 575 F.3d at 1331)); *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1321 (Fed. Cir. 2010) ("'Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.'" (quoting *Hebert*, 99 F.3d at 1116)).

For these reasons, Cortex has failed adequately to plead intent to deceive and has therefore failed to state a claim for inequitable conduct.

### b. Böhler and Frick References

Andritz also seeks dismissal of Count III on additional grounds with respect to the Böhler and Frick references. (Mot. at 12-20.) Unlike the other twelve references, Cortex includes allegations relating to the materiality of the Böhler and Frick references. Specifically, Cortex identifies specific features disclosed in those references that the '626 applicant used to distinguish over prior art. (Answer ¶¶ 50-53.) The Court agrees that Cortex has failed adequately to plead inequitable conduct with respect to any specific individual associated with the '626 application who had knowledge of the Böhler and Frick references, facts to support an inference that the relevant individual was aware of the materiality of the references to the '626 application, or facts to support an inference that the references were but-for material to the '626 application and not cumulative.

### 1) Knowledge of Prior References

Cortex has not alleged a sufficient factual basis to infer that any relevant individual associated with prosecuting the '626 patent "knew of the specific information in the [prior] patents that is alleged to be material to the claims of the" '626 patent. *Exergen*, 575 F.3d at 1329-30. Cortex generally alleges that Andritz's predecessor must have known about the Böhler and Frick references because it cited the references in prior prosecutions (Answer ¶¶ 43-47), but

PAGE 7 – OPINION AND ORDER

Cortex does not allege any facts to support a plausible inference that any individual associated with the '626 application was aware of specific material information in the Böhler and Frick references and intentionally withheld it from the PTO.

The Federal Circuit has recognized that "[a] reference may be many pages longs, and its various teachings may be relevant to different applications for different reasons[,]" and "[t]hus, one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Exergen*, 575 F.3d at 1330 (citing *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)). Accordingly, Cortex has failed sufficiently to plead that a relevant individual knew of the allegedly material information in the Böhler and Frick references and intentionally deceived the PTO by failing to disclose the references.[1] *See Exergen*, 575 F.3d at 1330 ("The pleading here does not allege facts that would support a reasonable inference that a relevant individual knew of the allegedly material information contained in the [prior] patents.").

### 2) But-for Materiality

Andritz also challenges the alleged materiality of the Böhler and Frick references. (Mot. at 13-20.) Cortex responds that its allegation that Andritz's predecessor "failed to disclose prior art references that teach precisely the features that led to allowance of the '626 claims" satisfies the but-for materiality requirement. (Opp'n at 3.) Specifically, Cortex alleges that in response to

---

[1] Cortex asserts in its response that the same attorney (who Cortex names) prosecuted both the '626 patent and the '313 patent (in which the references were disclosed), and submitted those applications six weeks apart (Opp'n at 4), but Cortex did not plead those facts or name any specific individuals in its counterclaim. *See Exergen*, 575 F.3d at 1329 (holding that allegation that "Exergen, its agents and/or attorneys . . . knew of the material information and deliberately withheld or misrepresented it" without naming "the specific individual associated with the filing or prosecution of the application" was not sufficiently particular to satisfy the "who" element of an inequitable conduct claim).

PAGE 8 – OPINION AND ORDER

the PTO's initial claim rejection relating to the '626 application, Andritz's predecessor distinguished its application by arguing that the '626 patent had a "spaced apart configuration of the clamping features" and by "defining the presence of the middle section of the knife which has a central smooth surface extending between the clamping features[,]" and Böhler has the same "spaced apart configuration of clamping features[.]" (Answer ¶ 50; *see also* Answer ¶ 52 (alleging that the references were also relevant to the '626 applicant's attempts to distinguish over other prior art.)

Prior art is but-for material "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art" and "[h]ence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291 ("This court holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality."); *see also Seiko Epson Corp. v. Glory Software Mfg., Inc.*, 830 F. Supp. 2d 1071, 1075 (D. Or. 2011) ("A 'material reference' is one that a 'reasonable examiner would consider . . . important [in considering] the patent application.'" (quoting *Cargill v. Canbra Foods,* 476 F.3d 1359, 1364 (Fed. Cir. 2007))).

Cortex does not allege here that the PTO examiner would have rejected the '626 application had it been made aware of the Böhler or Frick references. *Cf. Cyber Acoustics, LLC v. Belkin Int'l, Inc.,* 988 F. Supp. 2d 1236, 1245 (D. Or. 2013) ("Belkin sufficiently pleaded the 'how' requirement under *Exergen* and Rule 9(b) by explaining that the PTO would not have issued the '924 Patent without Westrup's representation."); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 860 (N.D. Cal. 2014) (denying motion to dismiss where the defendant alleged the "PTO specifically granted Capella's re-issue patents on the ground that the prior art

PAGE 9 – OPINION AND ORDER

did not 'teach or suggest using' 2-D mirrors for power control [where] Defendants allege[d] that the Smith patent teaches the use of 2-D mirrors for power control[.]").

Cortex has also failed to allege that the Böhler or Frick references were non-cumulative in light of other references the examiner considered. "A claim of inequitable conduct must explain why 'the withheld information is material and not cumulative[.]'" *Mentor Graphics Corp. v. EVE-USA, Inc.*, 13 F. Supp. 3d 1116, 1123 (D. Or. 2014) (citing *Exergen*, 575 F.3d at 1329-30). Cortex has not alleged that the Böhler or Frick references were not cumulative to the other prior art before the examiner, and Counterclaim III fails for this reason as well. *See Nalco,* 2014 WL 645365, at *5 ("Absent from Turner's proposed amendment and reply brief are any facts showing that the '380 patent was not cumulative of other references before the PTO. Turner's proposed amendment is therefore inadequate to plead inequitable conduct under Rule 9(b) as it stands."); *Abaxis,* 2011 WL 1044396, at *5 (dismissing inequitable conduct counterclaim because it did not allege "why the material information contained in the Buxton Patent is not cumulative to the prior art that was before the PTO during the prosecution of the patents-in-suit").

For all of these reasons, the Court dismisses Count III of Cortex's counterclaims for failure to state a claim.

### 3. Count V

Andritz moves to dismiss Count V because Cortex does not adequately plead the required elements of an inequitable conduct claim, and because an inequitable conduct claim cannot be based on a prosecuting attorney's arguments regarding a prior reference that was before the examiner. (Mot. at 22-28; Reply at 13-14.)

In Count V, Cortex alleges that Andritz "obtained allowance of the '958 patent by knowingly and intentionally making false and misleading statements to the USPTO during

PAGE 10 – OPINION AND ORDER

prosecution." (Answer ¶ 65.) Specifically, Cortex alleges that Andritz falsely argued that "'[t]here is nothing in the ['626] reference that suggests its structure should be combined with planar portions on the ridge or on the surface adjacent the cutting edges'" in order to "overcome the Examiner's rejection of the '958 patent claims as obvious based on the disclosure of the '626 patent[.]" (Answer ¶ 69.)

      The Court agrees that Cortex has failed to plead the required elements of an inequitable conduct claim in Count V, for the reasons discussed above, and dismisses Count V on that ground. More fundamentally, the Court agrees that Cortex cannot state a claim based on the alleged facts because, as a matter of law, an attorney's arguments distinguishing a prior art reference cannot be the basis of an inequitable conduct claim. *See, e.g., Illumina, Inc. v. BGI Genomics Co., Ltd.*, No. 19-cv-03770-WHO, 2020 WL 571030, at *3 (N.D. Cal. Feb. 5, 2020) ("In accordance with Federal Circuit law, district courts have not permitted inequitable conduct defenses based solely on attorney argument regarding prior art references."); *Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("[T]he law prohibits genuine misrepresentations of material fact, [but] a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct."); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008) ("Innogenetics' behavior before the PTO did not constitute a material omission or misrepresentation" because it "amounted to mere attorney argument and our precedent has made clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art." (citing *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000))); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("We therefore fail to see how the statements . . . which consist of attorney argument and

an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact.").

Dismissal for failure to state a claim is also appropriate here because Cortex's claim is based on the '958 applicant's alleged failure to disclose Figure 2 of the '626 patent to the examiner, but the '626 patent was before the examiner. *See Innogenetics*, 512 F.3d at 1379 ("Given that the Cha PCT application had been submitted for the patent examiner to examine herself, she was free to accept or reject the patentee's arguments distinguishing its invention from the prior art."); *see also LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 386 (D. Del. 2000) ("[E]ven if Plaintiff's characterization of the . . . patents was inaccurate, the Court concludes that this . . . would not rise to the level of a material misrepresentation" because "the mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her[.]"); *Gargoyles, Inc. v. United States*, 32 Fed. Cl. 157, 169 (1994) ("The fact that plaintiffs attempted to distinguish the claimed invention from prior art does not constitute a material omission or misrepresentation where the patent examiner was free to reach his own conclusion regarding the claimed invention on the art before him.").

The Court dismisses Count V for failure to plead the required elements, and because it is premised on a prosecuting attorney's allegedly misleading statement about prior art in an argument to the patent examiner and the statements could not rise to a material omission or misrepresentation where the prior art was before the examiner.

### B.   Unclean Hands and Infectious Unenforceability

#### 1.   Legal Standards

"The doctrines of infectious unenforceability and unclean hands have been developed to aid in determining whether an unconscionable act that occurs during the prosecution of one

PAGE 12 – OPINION AND ORDER

patent has an immediate and necessary relation to the equity sought in the prosecution of another patent." *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1017 (N.D. Cal. 2004).

### 2.   Count IV

In Count IV, Cortex seeks a declaratory judgment of unclean hands and infectious unenforceability of the '674 and '609 patents based on their relationship to the '626 patent, which Cortex alleges Andritz obtained through inequitable conduct. (Answer ¶¶ 55-62.) Andritz argues that if Cortex has failed to establish that Andritz engaged in inequitable conduct in Count III, Count IV must also fail. (Mot. at 21.) The Court agrees, and dismisses Count IV on that basis. *See Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2011 WL 3741501, at *6 (N.D. Cal. Aug. 25, 2011) (dismissing inequitable conduct counterclaim seeking "to invalidate the '684 patent based on a theory of infectious unenforceability from inequitable conduct during the prosecution of the [prior] patents" where claimant did not meet "the pleading standard for inequitable conduct as to the [prior] patents").

## C.   Affirmative Defenses

Andritz moves to strike Cortex's inequitable conduct affirmative defense on the ground that it fails as a matter of law. (Mot. at 28.) Andritz also moves to dismiss Cortex's laches, estoppel, acquiescence, waiver, and unclean hands affirmative defenses because Cortex does not allege any facts in support of those defenses. (*Id.*)

### 1.   Inequitable Conduct

"In all averments of fraud, including affirmative defenses, the circumstances constituting the fraud must be stated with particularity." *Multimedia Patent Tr. v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1210-11 (S.D. Cal. 2007). "[A]n inequitable conduct defense to a patent

infringement claim may be stricken pursuant to Rule 12(f) for failure to plead with particularity." *Id.* at 1211 (citing *Chiron Corp. v. Abbott Labs.,* 156 F.R.D. 219, 220-21 (N.D. Cal. 1994)).

If a party does not plead inequitable conduct with particularity, it is appropriate to strike the related inequitable conduct affirmative defense. *See Glas-Weld Sys., Inc., v. Boyle,* No. 6:12-cv-02273-AA, 2013 WL 1900650, at *1 (D. Or. May 4, 2013) (striking inequitable conduct affirmative defense where allegations did not satisfy the heightened pleading); *Zep Solar Inc. v. Westinghouse Solar Inc.*, No. C 11-06493 JSW, 2012 WL 1293873, at *3 (N.D. Cal. Apr. 16, 2012) (same); *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 900 (N.D. Cal. 2011) (same). Therefore, the Court grants Andritz's motion to strike Cortex's inequitable conduct affirmative defense because it is based on the same inequitable conduct claims the Court dismisses herein.

### 2.    Laches, Estoppel, Acquiescence, Waiver, and Unclean Hands

The Court also grants Andritz's motion to strike Cortex's sixth affirmative defense based on the equitable defenses of laches, estoppel, acquiescence, waiver, and unclean hands. Even under the fair notice standard,[2] Cortex has failed to plead any facts in support of its affirmative defenses to put Andritz on fair notice of its defenses. *See, e.g., AirWair Int'l Ltd. v. Schultz*, 84 F.

---

[2] In *Wyshak v. City National Bank*, the Ninth Circuit held that "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense." 607 F.2d 824, 827 (9th Cir. 1979) (citing *Conley v. Gibson*, 355 U.S. 41, 78 (1957)). The Supreme Court has since overruled *Conley*, concluding that Rule 8(a)(2) requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Following *Iqbal* and *Twombly*, district courts in the Ninth Circuit have split over whether *Wyshak*'s more lenient standard continues to apply to affirmative defenses, as this Court discussed in *Jones v. City of Portland*, No. 3:18-cv-01485-SB, 2018 WL 7078670, at *1-2 (D. Or. Dec. 21, 2018), *adopted by* 2019 WL 267716 (Jan. 17, 2019). Although the Ninth Circuit has not expressly addressed the continuing validity of *Wyshak*'s holding, it continues to apply the fair notice standard to affirmative defenses even after *Iqbal* and *Twombly*. *See Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) ("[T]he 'fair notice required by the pleadings standards only requires describing the defense in 'general terms.'") (citation omitted).

PAGE 14 – OPINION AND ORDER

Supp. 3d 943, 955-59 (N.D. Cal. 2015) (striking laches, estoppel, and acquiescence affirmative defenses where the defendant did not allege sufficient facts in support); *Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-960-ST, 2011 WL 3881039, at *5 (D. Or. Sept. 2, 2011) (striking waiver affirmative defense where the defendant did not allege sufficient facts in support); *see also McDonald v. Alayan*, No. 3:15-cv-02426-MO, 2016 WL 2841206, at *3 (D. Or. May 13, 2016) (granting motion to strike affirmative defenses and finding that although "[f]air notice does not require a detailed statement of facts[,] . . . it does require the defendant state the nature and grounds for the affirmative defense" and the affirmative defenses at issue were "conclusory allegations consisting of a title asserting the defense and then a one sentence explanation that adds nouns and verbs").

## CONCLUSION

For the reasons stated, the Court GRANTS Andritz's motion to dismiss and strike (ECF No. 18), and dismisses with leave to amend Counts III, IV, and V of Cortex's counterclaims, and strikes with leave to amend Cortex's third and sixth affirmative defenses. If Cortex is able in good faith to cure the pleading deficiencies identified herein, it may file an amended answer by August 18, 2020.

DATED this 4th day of August, 2020.

HON. STACIE F. BECKERMAN
United States Magistrate Judge